## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF NEW YORK

| | |
|---|---|
| TYLER BLANKENSHIP, *on behalf of himself and all others similarly situated*, <br><br> Plaintiff, <br><br> v. <br><br> LEONARD'S EXPRESS, INC. <br><br> Defendant. | Case No. 1:24-cv-00618-JLS |

## PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARILY APPROVAL OF CLASS ACTION SETTLEMENT WITH INCORPORATED MEMORANDUM OF LAW

Plaintiff Tyler Blankenship, individually and on behalf of all others similarly situated, respectfully moves pursuant to Fed. R. Civ. P. 23(a), (b)(3), and (e) to certify the Settlement Class,[1] preliminarily approve the proposed Settlement, and approve the notices, notice program, Claim Form, and Claims process.

## I.    INTRODUCTION

On May 10, 2024, Defendant Leonard's Express, Inc. announced a data security incident (the "Incident") impacting Private Information, including some Social Security numbers and certain medical information, of approximately 6,000 individuals. See Joint Declaration of Class Counsel ("Joint Decl.") ¶ 3, attached as Exhibit B. As a result of the Incident, this Action was initiated in connection with Defendant's alleged failure to safeguard the Private Information it maintained on behalf of the Settlement Class. *Id*. ¶ 6. Defendant denies all liability and wrongdoing. *Id*. ¶ 6.

---

[1] All capitalized terms herein shall have the same meanings as those defined in Section IV of the Settlement Agreement, attached hereto as Exhibit A.

After extensive arm's-length negotiations spanning three months, the Parties reached a Settlement that is fair, adequate, and reasonable. *Id*. ¶ 9. The Settlement's benefits include reimbursement for documented out-of-pocked expenses incurred because of the Incident or Alternative Cash Payments, as requested by the Settlement Class, up to an aggregate of $325,000. *Id*. ¶ 15. Additionally, Defendant has agreed to provide one year's worth of credit monitoring for Settlement Class Members who submit Valid Claims. *Id*. ¶ 16. The Parties negotiated Plaintiff's service award and Plaintiff's Counsel's Attorneys' Fees, Costs, and Expenses separately, and those payments will be addressed in a separate motion. Plaintiff strongly believes the Settlement is favorable to the Settlement Class. *Id*. ¶ 26.

## II.    BACKGROUND AND PROCEDURAL HISTORY

Defendant is a trucking business that operates across multiple states. Joint Decl. ¶ 4. In the course of employment with Defendant, employees and applicants provide Defendant with sensitive, personal, and Private Information such as address, telephone number, date of birth, Social Security number, driver's license number, driver's license state, login information, and medical insurance information. *Id*.

On or about May 10, 2024, Defendant discovered that an unauthorized party accessed Private Information from its computer systems on or around November 30, 2023. *Id*. ¶ 5. On or around June 17, 2024, Defendant began sending notice letters to individuals advising them that their Private Information had been potentially compromised in the Incident. *Id*.

On July 1, 2024, Plaintiff filed a Class Action Complaint in the United States District Court of the Western District of New York, alleging: (1) negligence; (2) breach of implied contract; (3) negligence *per se*; (4) breach of fiduciary duty; (5) unjust enrichment; and (6) declaratory judgment. [DE # 1].

The Parties successfully agreed to the material settlement terms trough their significant arms-length negotiations. *Id*. On November 12, 2024, they filed a Joint Letter informing the Court of the Settlement and requesting a stay on all deadlines. [DE # 12]. Over next two months, the Parties diligently drafted, negotiated, and finalized the Settlement Agreement, Notices, and Claim Form, and agreed to a settlement administrator. Joint Decl. ¶ 10. The Settlement Agreement was signed on February 7, 2025. *Id*.

## III.    SUMMARY OF SETTLEMENT

### A.    Settlement Class

The Settlement Class has approximately 6,540 members and is defined as follows:

> All persons who were sent written notification by Leonard's Express that their Private Information was potentially compromised as a result of the Incident that occurred on or around November 30, 2023.

Agreement ¶ 1.26. The Settlement Class specifically excludes: (i) Leonard's Express, the Related Parties, and their officers and directors; (ii) all Settlement Class Members who timely and validly request exclusion from the Settlement Class; (iii) any judges assigned to this case and their staff and family; and (iv) any other Person found by a court of competent jurisdiction to be guilty under criminal law of initiating, causing, aiding or abetting the criminal activity occurrence of the Incident or who pleads *nolo contendere* to any such charge. *Id*.

### B.    Settlement Consideration

Defendant will pay all Valid Claims with a maximum amount of $325,000. *Id*. ¶ 2.2. Settlement Class Members may elect one of two types of Cash Payments and Credit/Data Monitoring. *Id*. Defendant is also paying the costs of settlement administration and has committed to implementing and/or maintaining valuable security improvements. *Id*. ¶ 2.4. Defendant

negotiated Plaintiff's Service Award and attorneys' fees and costs to Class Counsel separately and will address those in a separate motion. *Id*. ¶ 15.

    1.    ***Cash Payments*** – Settlement Class Members may elect either:

        **a.**    **Documented Out-of-Pocket Expenses**. A Claim for Cash Payment for up to $650.00 (subject to *pro rata* adjustment based on total Valid Claims) per Settlement Class Member upon presentation of reasonable documented Incident related losses. *Id*. ¶ 2.2. To receive payment, Settlement Class Members must elect Documented Out-of-Pocket Expenses on the Claim Form attesting under penalty of perjury to incurring documented losses and submitting reasonable supporting documents. *Id*. They shall not be reimbursed for expenses reimbursed for the same expenses by another source. *Id*. ¶ 2.3. If a Settlement Class Member does not submit reasonable documentation supporting a loss, or if the Claim is rejected by the Settlement Administrator for any reason, and the Settlement Class Member fails to cure, the Claim will be deemed invalid, and Defendant will not be obligated to pay the claim. *Id*. ¶ 2.2.1.

        **b.**    **Alternative Cash Payment**. As an alternative to Documented Out-of-Pocket Expenses, a Settlement Class Member may elect to receive an Alternative Cash Payment, which is a flat cash payment in the amount of $29.00 (subject to *pro rata* adjustment upon total Valid Claims). *Id*. ¶ 2.2.

    2.    ***Credit Monitoring*** – In addition to electing a Cash Payment, Settlement Class Members may elect one year of bureau credit monitoring. *Id*.

***Pro Rata Adjustments on Cash Payments*** – Settlement Class Member Cash Payments will be subject to a pro rata decrease from the Settlement Fund if the amount of Valid Claims exhausts the Settlement Fund, Cash Payments may be reduced pro rata accordingly. *Id*. ¶ 2.2.

3.      ***Business Practice Changes*** – Defendant has provided assurances that it either has or will undertake reasonable steps to further secure its systems and environments. *Id*. ¶ 2.4.

4.      ***Releases*** – The Releasing Parties will release the Released Parties for claims relating to the Incident. Regardless of whether they submit a Claim, Settlement Class Members who do not opt-out of the Settlement will release all claims, whether known or unknown, again Defendant and the other Released Parties. *Id*. ¶ 6.

5.      ***The Notice Program, Claim Process, Opt-Outs, and Objections***

The Parties have agreed to use CPT Group as the Settlement Administrator, who shall administer various aspects of the Settlement under the Parties' supervision. *Id*. ¶ 1.3.

***Notice Program*** – Defendants will deliver the Class Member Information to the Settlement Administrator within 14 days of Preliminary Approval. *Id*. ¶ 3.2. Within 45 days of Preliminary Approval, Short Notice will be sent to the Settlement Class Members to either the email address (if available) or last postal address Defendant has on record. *Id*. ¶ 3.2. The Settlement Administrator will perform reasonable address traces for undeliverable postcard Short Notices. *Id*. ¶ 3.2. Email and postcard Short Notice shall include, inter alia: direction to the Settlement Website, the Claims Deadline, the Opt-Out Date, the Objection Date, the requested attorneys' fees, and the date of the Final Fairness Hearing. *Id*. ¶ 1.30.

***Claims Process*** – The Claims process is structured to ensure all Settlement Class Members have adequate time to review the Settlement terms, compile documents supporting their Claim if Documented Out-Of-Pocket Expenses is elected, submit Claims, and decide whether to opt-out or object. Joint Decl. ¶ 34. Claim Forms (mail or online) are due to the Settlement Administrator by the Claim Form Deadline. Agreement ¶ 2.2.1. The Claim Form is in plain language for easy

completion. Joint Decl. ¶ 34. The Settlement Administrator will review the Claim Forms for completeness and validity. Agreement ¶ 2.5.

*Opt-outs and Objections* – The opt-out and objection deadlines are 60 days after the date on which the notice program commences, *id*. ¶ 4.1, to provide sufficient time to access and review the Settlement documents, including Plaintiff's Application for Attorneys' Fees, Costs, and Service Awards. Anyone who opts-out may not object.

### 6.    *Service Awards, Attorneys' Fees and Costs*

*Service Awards* – The Settlement Agreement calls for a reasonable Service Award for the Class Representative of $3,000.00, *id*. ¶ 7.3, meant to compensate him for his efforts on the Settlement Class's behalf, including serving as named Plaintiff, assisting in the Action's investigation, maintaining contact with Class Counsel, reviewing case documents, being prepared to assist with discovery, and answering Class Counsel's many questions. Joint Decl. ¶ 35.

Attorneys' Fees and Costs – After agreeing to the Settlement's material terms, Class Counsel negotiated attorneys' fees and costs separate from the total of Valid Claims. Class Counsel intends to seek an attorneys' fees award not to exceed one-third of the total aggregate cap of Documented Out-of-Pocket Expenses and Alternative Case Payment and reimbursement of litigation costs. Agreement ¶ 7.2. The Notices advise the Settlement Class of these intended requests and further information on how to object. Joint Decl. ¶ 36. The Motion for Final Approval will include the Application for Attorneys' Fees, Costs, and Service Awards prior to the deadlines to opt-out of object.

## IV.    LEGAL AUTHORITY

Rule 23(e) requires court approval of any class settlement, following notice to the class. The preliminary approval stage provides a forum for the initial evaluation of a settlement, and

where no class has been previously certified, a determination as to whether a proposed settlement class should be certified. 2 Newberg & Conte, *Newberg on Class Actions* §§ 11.22, 11.27 (3d ed. 1992); *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litig.*, 330 F.R.D. 11, 27 (E.D.N.Y. 2019). During the preliminary approval stage of settlement, courts "review the proposed terms of settlement and make a preliminary determination on the fairness, reasonableness and adequacy of the settlement terms." *In re Initial Pub. Offering Sec. Litig.*, 243 F.R.D. 79, 87 (S.D.N.Y. 2007). In weighing a grant of preliminary approval, courts examine the factors contained in the text of Rule 23(e)(2) "to determine whether it will likely grant final approval based on the information currently before the Court." *In re Payment Card*, 330 F.R.D. at 28.

Plaintiffs here seek preliminary approval of the proposed Settlement—an initial evaluation of the fairness of the proposed Settlement. *See Manual for Complex Litigation* § 30.44 (4th ed.). Judicial and public policy favors the resolution of disputes through settlement. *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2d Cir. 2005) (noting "the strong judicial policy in favor of settlements, particularly in the class action context," and that the "compromise of complex litigation is encouraged by the courts and favored by public policy."). "[T]he granting of [preliminary approval] is not tantamount to a finding that the settlement is fair and reasonable." *In re Canon U.S.A. Data Breach Litig.*, No. 20-CV-6239-AMD-SJB, 2023 WL 7936207, at *3 (E.D.N.Y. Nov. 15, 2023) (quoting *Lora v. To-Rise, LLC*, 452 F. Supp. 3d 5, 7 (E.D.N.Y. 2019)) (alterations in original). "It is at most a determination that there is what might be termed 'probable cause' to submit the proposal to class members and hold a full-scale hearing as to its fairness." *Id*. (quoting *Lora*, 452 F. Supp. 3d at 7). In granting preliminary approval, the Court determines it will "likely" be able to grant final approval under Federal Rule of Civil Procedure 23(e)(2) and certify the Settlement Class.

Because the proposed Settlement falls within the range of possible approval, this Court should grant Preliminary Approval and allow Notice to be provided to the Settlement Class. *See* 2 Newberg & Conte, *Newberg on Class Actions* ("*Newberg*") § 11.25 (3d ed. 1992).

## V.     LEGAL DISCUSSION

### A.     The Court Should Certify the Proposed Class for Settlement Purposes.

Under Federal Rule of Civil Procedure 23(a), a class action may be maintained where the movants demonstrate numerosity, commonality, typicality, and adequacy of representation. Additionally, under Rule 23(b)(3), a class may be maintained where the predominance and superiority elements are met. When evaluating certification of a settlement class, manageability is not a concern because there will be no trial. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997).

Despite the necessarily rigorous analysis of certain prongs at the preliminary approval stage, class actions are regularly certified for settlement. In fact, similar data breach cases have been certified—on a *national* basis—including the record-breaking settlement in *In re Equifax, Inc. Customer Data Sec. Breach Litig.*, No. 1:17-md-2800-TWT (N.D. Ga. 2019). *See also, e.g.*, *Kostka v. Dickey's Barbecue Restaurants, Inc.*, No. 3:20-cv-03424-K, 2022 WL 16821685 (N.D. Tex. 2022), *report and recommendation adopted*, 2022 WL 16821665 (N.D. Tex. Nov. 8, 2022); *Welsh v. Navy Federal Credit Union*, No. 5:16-CV-1062-DAE, 2018 WL 7283639 (S.D. Tex. 2018); *In re Target Corp. Customer Data Sec. Breach Litig.*, 309 F.R.D. 482 (D. Minn. 2015); *In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.*, 851 F. Supp. 2d 1040 (S.D. Tex. 2012). This case is no different.

*Numerosity.* Numerosity requires "the class [be] so numerous that joinder of all members is impractical." Fed. R. Civ. P. 23(a)(1). "[N]umerosity is presumed at a level of [forty] members."

*In re Payment*, 330 F.R.D. at 51 (quoting *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995)). Here, the Settlement Class clearly surpasses that threshold because it includes approximately 6,540 individuals who had their Private Information potentially compromised. Judicial economy would be well-served by certification.

  ***Commonality.*** Commonality requires Plaintiff to show "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). The threshold is not high, as every question need not be common, rather the questions linking class members must be substantially related to the resolution of the litigation and capable of generating common answers "apt to drive the resolution of the litigation." *In re Heartland*, 851 F. Supp. 2d at 1052 (citing *Wal-Mart Stores v. Dukes*, 564 U.S. 338, 347 (2011)). "Common issues—such as liability—may be certified, consistent with Rule 23, even where other issues—such as damages—do not lend themselves to classwide proof.*" Johnson v. Nextel Commun. Inc.*, 780 F.3d 128, 138 (2d Cir. 2015). Here, the commonality requirement is met because numerous common issues exist, including: whether Defendant failed to adequately safeguard the Settlement Class's Private Information; whether Defendant failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of that information; whether Defendant's data security systems prior to and during the Incident complied with applicable data security laws and regulations; and whether Defendant's conduct was negligent. These common questions, and others alleged in the complaint, are central to the causes of action, will generate common answers, and can be addressed class wide.

  ***Typicality.*** Rule 23(a)(3) typicality is satisfied where "the claims or defenses of the class representatives have the same essential characteristics as those of the class as a whole." The typicality requirement "is satisfied when each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability."

*Shahriar v. Smith & Wollensky Rest. Grp., Inc.*, 659 F.3d 234, 252 (2d Cir. 2011) (quoting *Robidoux v. Celani*, 987 F.2d 931, 936 (2d Cir. 1993)). Plaintiff's and Settlement Class Members' claims all stem from the Incident and the cybersecurity protocols Defendant had (or did not have) in place to protect their Private Information. All have Article III standing. *Kostka*, 2022 WL 16821685, at *4 (when class action settles at pleading stage, court only considers whether named plaintiffs plausibly alleged minimum Article III standing requirements, as Plaintiff did in his Complaint). Thus, typicality is satisfied.

 *Adequacy of Representation.* Plaintiff must be able to provide fair and adequate representation. Plaintiff must establish: (1) there is no antagonism or conflict of interest between the class representative and other Settlement Class Members; and (2) counsel and the Class Representative are competent, willing, and able to protect the interests of absent class members. *See Cordes & Co. Fin. Servs. v. A.G. Edwards & Sons, Inc.*, 502 F.3d 91, 99 (2d Cir. 2007). Here, Plaintiff's interests are aligned with the Settlement Class as they seek relief for injuries arising out of the same Incident to their Private Information. The Settlement will make all of them eligible for the same benefits Further, proposed Class Counsel have many years of combined experience as class action litigators, including data breach litigation, and are well suited to advocate for the Settlement Class. *See* Joint Decl. Exs. 1–3. Moreover, they have put their collective experience to use in negotiating an early-stage settlement guaranteeing immediate relief.

 *Predominance and Superiority.* Rule 23(b)(3) provides class certification is proper when "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for failure and efficiently adjudicating the controversy." This inquiry is two-fold. First, predominance is satisfied "if resolution of some of the legal or factual questions that qualify each class member' case as a

genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof." *Roach v. T.L. Cannon Corp.*, 778 F.3d 401, 405 (2d Cir. 2015). In this case, key predominating questions are whether Defendant had a duty to exercise reasonable care in safeguarding, securing, and protecting the Private Information and whether Defendant breached that duty. The common questions predominate over any individualized issues, like in other data breach cases. *See, e.g.*, *In re Heartland*, 851 F. Supp. 2d at 1059 (predominance satisfied in data breach case despite state law variations, concluding such variations went only to trial management, which was inapplicable for settlement class); *In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 312–15 (N.D. Cal. 2018) (same); *Hapka v. CareCentrix, Inc.*, No. 2:16-cv-02372-KGG, 2018 WL 1871449, at *2 (D. Kan. Feb. 15, 2018) (same); *In re The Home Depot, Inc., Customer Data Sec. Breach Litig.*, No. 1:14-md-02583-TWT, 2016 WL 6902351, at *2 (N.D. Ga. Aug. 23, 2016) (same). Second, the resolution of approximately 6,540 claims in one class action is far superior to litigating individual lawsuits. Class certification—and class resolution—guarantee an increase in judicial efficiency and conservation of resources over the alternative of individually litigating so many individual cases arising out of the Incident.

Thus, with Rule 23(a) and 23(b)(3) satisfied, the Settlement Class should be certified.

**B.      The Settlement Terms are Fair, Adequate, and Reasonable.**

At Preliminary Approval, and before Notice is sent, the Court must determine it will "likely" be able to grant Final Approval under the Rule 23(e)(2) factors, deciding whether:

> (A)   the class representative and class counsel have adequately represented the class;
> (B)   the proposal was negotiated at arm's length;
> (C)   the relief provided for the class is adequate, taking into account:
>> (i)    the costs, risks, and delay of trial and appeal;
>> (ii)   the effectiveness of any proposed method of distributing relief

to the class, including the method of processing class member claims;

(iii) the terms of any proposed award of attorney's fees, including timing of payment; and

(iv) any agreement required to be identified under Rule 23(e)(3); and

(D) the proposal treats class members equitably relative to each other.

Before the 2018 Rule 23(e) revisions, the Second Circuit developed its own *Grinnell* factors for whether a settlement is fair, adequate, and reasonable, including: (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation. *In re Initial Pub. Offering Sec. Litig.*, 260 F.R.D. 81, 88 (S.D.N.Y. 2009) (citing *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974).

Because the Rule 23 and *Grinnell* factors overlap, Second Circuit courts often combine them. In re Payment, 330 F.R.D. at 29 ("Indeed, there is significant overlap between the *Grinnell* factors and the Rule 23(e)(2)(C–D) factors, as they both guide a court's substantive, as opposed to procedural, analysis."); *see also* Fed. R. Civ. P. 23(e)(2), Committee Notes to 2018 amendments ("The goal of this amendment is not to displace any [circuit case-law] factor, but rather to focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal.").

Because the public interest strongly favors the voluntary settlement of class actions, there is a strong presumption in favor of finding the settlement fair, reasonable, and adequate.

*Wal-Mart Stores, Inc.*, 396 F.3d at 116. A proposed settlement "will be preliminarily approved unless there are obvious defects in the notice or other technical flaws, or the settlement is outside the range of reasonableness or appears to be the product of collusion, rather than arms-length negotiation." 2 *McLaughlin on Class Actions* § 6:7 (15th ed. 2018). Here, the Court should find it is likely to conclude the Settlement is fair, reasonable, and adequate under both the Rule 23(e)(2) and *Grinnell* factors and grant Preliminary Approval to allow Notice to issue to the Settlement Class.

### 1. *Class Representatives and Counsel have Adequately Represented the Class. (Fed. R. Civ. P. 23(e)(2)(A)).*

As with Rule 23(a) adequacy of representation requirement, plaintiffs must establish that: (1) the there is no antagonism or conflict of interest between the class representatives and other members of the class; and (2) counsel and the class representatives are competent, willing, and able to protect the interests of absent class members. *Cordes & Co.*, 502 F.3d at 99. Here, the Settlement Class members are all potentially affected by the same Incident as the Class Representatives, and thus the Class Representatives have common interests with the Settlement Class. Moreover, the Class Representatives have ably represented the Settlement Class, maintaining contact with Class Counsel, reviewing and approving pleadings, assisting in the investigation of the Action, remaining available for consultation throughout mediation, reviewing the Settlement documents, and answering Class Counsel's questions. Joint Decl. ¶ 36.

Class Counsel have also vigorously pursued the Settlement Class's interests in securing a Settlement bringing immediate, valuable benefits, while avoiding the risks of continued litigation. To do so, they leaned on their extensive experience in data breach litigation, their detailed investigation of this particular matter, and informal discovery exchanged during the course of their

negotiations. Joint Decl. ¶ 42. As such, Federal Rule of Civil Procedure 23(e)(2)(A) supports Preliminary Approval.

### 2. *The Settlement is the product of good-faith arm's-length negotiations and is absent of any collusion. (Fed. R. Civ. P. 23(e)(2)(B)).*

The Second Circuit recently abrogated the "presumption of fairness, adequacy, and reasonableness" attaching to a class settlement "reached in arm's-length negotiations between experienced, capably counsel after meaningful discovery." *See Moses v. New York Times Co.*, 79 F.4th 235 (2d Cir. 2023). However, "a court-appointed mediator's involvement in pre-certification settlement negotiations" may still help "ensure that the proceedings were free of collusion and undue pressure." *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litig.*, 827 F.3d 223, 235 (2d Cir. 2016). Here, there is no evidence of fraud or collusion. After a full exchange of information related to liability and damages, the Parties negotiated a fair and reasonable settlement similar to or exceeding the value of other similar data breach class action settlements. Joint Decl. ¶ 8. Thereafter, the Parties spent weeks negotiating, drafting, and finalizing the finer points of the Settlement in the Agreement. *Id.* ¶ 11. Moreover, the proposed Settlement does not favor any Settlement Class member over any other, weighing against any evidence of fraud or collusion and favoring approval. *See Vaughn v. Am., Honda Motor Co.*, 627 F. Supp. 2d 738, 748 (E.D. Tex. 2007). Accordingly, Federal Rule of Civil Procedure 23(e)(2)(B) is satisfied.

### 3. *The Settlement Agreement provides substantial relief to the Settlement Class, considering the uncertainty of prevailing on the merits, the effectiveness of the proposed distribution of relief, and the attorneys' fees sought. (Fed. R. Civ. P. 23(e)(2)(C)).*

The third and most important Rule 23(e)(2)(c) factor weighs heavily in favor of granting Preliminary Approval and overlaps with the several of the *Grinnell* factors (complexity, length,

and expense of litigating; probability of prevailing on the merits; and range of possible recovery and certainty of damages). The Settlement guarantees Settlement Class Members real relief for harms and protections from potential future fall-out from the Incident. First, all Settlement Class Members eligible for one year of one bureau credit monitoring. Agreement ¶ 2.1; Joint Decl. ¶ 16. Second, they may Claim reimbursement for Documented Out-of-Pocket Expenses (up to $650.00 for documented losses, subject to *pro rata* adjustment) or Alternative Cash Payment ($29.00 flat cash payment, subject to *pro rata* adjustment). Agreement ¶ 2.2. These benefits are consistent with, and in fact exceed, other approved settlements.  Joint Decl. ¶ 17.

Although Plaintiff is confident in the merits of his claims, the litigation risks cannot be disregarded. Besides the potential that either side will lose at trial, Plaintiff anticipates substantial additional costs if litigation continues, including experts. Plaintiff would need to defeat a motion to dismiss, counter a later motion for summary judgement, and both gain and maintain certification of the Settlement Class, with a near inevitable interlocutory appeal attempt. As at least one court has found, because the "legal issues involved in [in data breach litigation] are cutting-edge and unsettled . . . many resources would necessarily be spent litigating substantive law as well as other issues." *ln re Target Corp. Customer Data Sec. Breach Litig.*, No. 14-2522, 2015 WL 7253765, at *2 (D. Minn. Nov. 17, 2015).

The Settlement's value is guaranteed in the face of uncertainty in prevailing on the merits. While Plaintiff strongly believes in the merits, he also understand that Defendant asserts a number of potentially case-dispositive defenses. In fact, if litigation continues, Plaintiff would likely have to immediately survive a motion to dismiss. Due at least in part to their cutting-edge nature and the rapidly evolving law, data breach cases generally face substantial hurdles-even just to make it past the pleading stage. *See, e.g., Logan v. Marker Group, lnc.*, 4:22-CV-00174,

2024 WL 3489208 (S.D. Tex. July 18, 2024) (dismissing all but one claim). Class certification is another hurdle. *See, e.g.*, *ln re Blackbaud, lnc., Customer Data Breach Litig.*, No. 3:20-mn-02972-JFA, 2024 WL 2155221 (D.S.C. May 14, 2024) (denying class certification in a data breach case).

Plaintiff disputes Defendant's defenses, but obviously success at class certification and trial is far from certain. Through the Settlement, Plaintiff and Settlement Class Members gain significant benefits without risking not receiving any relief at all if the case continues.

> **4.  *The proposed Settlement treats Settlement Class Members equitably. (Fed. R. Civ. P. 23(e)(2)(D)).***

Here, the Settlement does not improperly discriminate between any segments of the Settlement Class. All Settlement Class members are eligible to make a Claim for a Cash Payment and credit monitoring, subject to proper claim completion and validation by the Settlement Administrator.  Accordingly, this factor also weighs in favor of preliminary approval.

> **5.  *The remaining "Grinnell" Factors also weigh in favor of Preliminary Approval.***

The remaining *Grinnell* factors also support Preliminary Approval and the Court's conclusion that it is likely to grant Final Approval. As to the third factor (stage of the litigation and available discovery), the Settlement was reached only after extensive investigation by the Parties and an informal exchange of information such that Class Counsel could fully understand the strengths and weaknesses of Plaintiff's claims and Defendant's defenses. Where Parties possess ample information with which to evaluate the merits of competing positions, a lack of formal discovery will not prevent preliminary approval of a settlement. *Ayers v. Thompson*, 358 F.3d 356, 369 (5th Cir. 2004).

As to the sixth factor (reactions of the class to the settlement), it is most appropriately examined after the Settlement Class has been issued Notice and absent Settlement Class members

have a chance to respond, but there is no reason to believe there will be antagonism to the Settlement. Plaintiff approves of its terms, as do proposed Class Counsel, based on their deep experience litigating data breach and other class actions. The Settlement's valuable relief to Settlement Class Members, makes it fair, reasonable, adequate, and worthy of Preliminary Approval. Joint Decl. ¶ 26.

Thus, these additional *Grinnell* factors weigh in favor of approving the proposed Settlement. Accordingly, the Court should grant Preliminary Approval.

**C.    The Proposed Settlement Administrator will Provide Adequate Notice.**

Rule 23(e)(1) requires "direct reasonable notice to all class members who would be bound by" a proposed Settlement. For a Rule 23(b)(3) class, notice must be "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). It is that which "is reasonably calculated, under all of the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950).

The proposed Notice Program is designed to satisfy Rule 23(c)(2)(B) and the *Manual for Complex Litigation*. *See* Agreement, Exs. A-E. Direct and individual notice via email or first-class mail to each Settlement Class member will occur. Joint Decl. ¶ 27. If Email Notice is returned undeliverable, a Postcard Notice will be sent. If a Postcard Notice is undeliverable, the Settlement Administrator will research a better address and re-send Notice. *ld.* ¶ 28. The Long Form Notice will also be available to Settlement Class members on the Settlement Website, along with all relevant filings. *ld.* ¶ 29. The Settlement Administrator will maintain a toll-free telephone number by which Settlement Class members can seek answers to frequently asked questions or request a

Long Form Notice or Claim Form be mailed. *ld*. ¶ 30. A post office box will be maintained to receive Claim Forms, opt-out requests, and objections. *ld*. ¶ 31.

The Notices are clear and straightforward, defining the Settlement Class and the Settlement's essential terms; clearly describing the options available to the Settlement Class and the deadlines for taking action; disclosing the requested Service Awards for the Class Representatives and the attorneys' fee amount Class Counsel intends to seek and that litigation costs will be sought; explaining the opt-out, objection, and Claim procedures and deadlines; stating the Final Approval Hearing date, time, and location; and prominently displaying Class Counsel's contact information. Agreement, Exs. A-E.

The proposed direct Email Notice or Postcard Notice is the gold standard and is consistent with notice programs approved in various Circuits. *See, e.g.*, *Burnett v. CallCore Media, Inc.*, No. 4:21-cv-03176, 2024 WL 3166453, at *3 (S.D. Tex. June 25, 2024) (approving notice plan with postcard and email notice). Accordingly, the Notice Program should be approved. Joint Decl. ¶ 32.

## VI.    PROPOSED SCHEDULE OF EVENTS AND CONCLUSION

The Court should also set the Final Fairness Hearing date and time. Deadlines in the Final Approval process, including the opt-out and objection deadlines, will be determined based on the original Final Approval Hearing date. Plaintiff proposes the following schedule:

| | |
|---|---|
| **Notice Program Begins (Email Notice and Postcard Notice Sent)** | 45 days after Preliminary Approval Order (subject to receipt of necessary information to pay Settlement Administrator and provision of Class Member Information per ¶ 3.2 of the Settlement Agreement) |
| **Notice Program Complete** | 60 days after Preliminary Approval Order |
| **Deadline to file Motion for Final Approval and Application for Attorneys' Fees, Costs, and Service Awards** | 45 days before original Final Approval Hearing date |

| **Opt-Out Deadline** | 60 days after commencement of the Notice Program |
|---|---|
| **Objection Deadline** | 30 days before original Final Approval Hearing date |
| **Deadline to Respond to Objections** | 15 days before original Final Approval Hearing date |
| **Deadline to Submit Claim Forms** | 15 days before original Final Approval Hearing date |
| **Final Approval Hearing** | _____, 2025, at _____ am/pm.<br>(Preferably the week of *May 12, 2025* or after) |

## VII.    PROPOSED SCHEDULE OF EVENTS AND CONCLUSION

Plaintiff and Class Counsel respectfully request the Court: (1) grant Preliminary Approval; (2) certify for settlement purposes the Settlement Class, pursuant to Fed. R. Civ. P. 23(a), 23(b)(3) and (e); (3) approve the Notice Program and the form of the Notices; (4) approve the Claim Form and Claim process; (5) approve the Notice Program's opt-out and objection procedures; (6) appoint Plaintiff as Class Representative; (7) appoint as Class Counsel Jarrett Ellzey and Leigh Montgomery; (8) appoint CPT. Group, as the Settlement Administrator; (9) continue to stay the Action pending Final Approval; (10) enjoin and bar all members of the Settlement Class from continuing in any litigation or asserting any claims against Defendant and the other Released Parties arising out of, relating to, or in connection with the Released Claims prior to the Court's decision to grant Final Approval of the Settlement; and (11) schedule a Final Approval Hearing.

Dated: February 10, 2025

Respectfully submitted,

*/s/Jarrett L .Ellzey*
**EKSM, LLP**
Jarrett L. Ellzey-*pro hac vice*
Texas Bar No. 24040864
jellzey@eksm.com
Leigh S. Montgomery-*pro hac vice*
Texas Bar No. 24052214
lmontgomery@eksm.com
4200 Montrose, Suite 200
Houston, Texas 77006
Phone: (888) 350-3931
Fax: (888) 276-3455

**THE KANTOR GULLO LAW FIRM, PLLC**
Christina M. Gullo
348 Harris Hill Road, Ste. A
Williamsville, NY 14221
Telephone:716.626.0404
cgullo@kantorgullolaw.com

**ATTORNEYS FOR PLAINTIFFS**

## **CERTIFICATE OF SERVICE**

The undersigned attorney hereby certifies that on February 10, 2025, he caused a true and correct copy of the foregoing Motion for Preliminary Approval to be filed electronically. Notice of this filing will be sent to all parties registered on this Court's ECF system by operation of the Court's electronic filing system.


_/s/ Jarrett L. Ellzey_
Jarrett L. Ellzey