## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF NEW YORK

TYLER BLANKENSHIP, *on behalf of himself and on behalf of all others similarly situated*,

     Plaintiff,

vs.

LEONARD'S EXPRESS, INC.,

     Defendant.

CIVIL ACTION NO. 1:24-cv-00618-JLS

---

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S UNOPPOSED
MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT, AND
APPLICATION FOR ATTORNEYS' FEES, COSTS, COSTS OF CLAIMS
ADMINISTRATION AND SERVICE AWARD TO PLAINTIFF**

Pursuant to Fed. R. Civ. P. 23, Plaintiff[1] respectfully submits this Motion for Final Approval of Class Action Settlement and Application for Attorneys' Fees, Costs, Costs of Claims Administration, and Services Award, supported by a Declaration of Jarrett L. Ellzey, attached as *Exhibit A*, a Declaration of the Settlement Administrator ("Admin. Decl."), attached as *Exhibit B*, and a Supplemental Declaration of the Settlement Administrator ("Supp. Admin. Decl.), attached as *Exhibit C.*

## I.    INTRODUCTION

On February 19, 2025, this Court preliminarily approved the Settlement between Plaintiff and Defendant Leonard's Express, Inc., resolving all disputes arising from the Data Security

---

[1] All capitalized terms used herein shall have the same meanings as those defined in the Settlement Agreement, previously filed as ECF No. 30-1.

Incident. *See* Order Granting Preliminary Approval of Class Action Settlement (ECF No. 31). The Settlement Agreement ("Agreement") (ECF No. 30-1) provides for substantial Settlement Class Member Benefits for approximately 6,540 individuals, including reimbursement for documented out-of-pocket expenses incurred because of the Incident or Alternative Cash Payments, as requested by the Settlement Class, up to an aggregate of $325,000. Additionally, Defendant has agreed to provide one year's worth of credit monitoring for Settlement Class members who submit Valid Claims. Defendant is also paying the costs of the settlement administration and has committed to implementing and/or maintaining valuable security improvements.

Plaintiff and Class Counsel now move the Court for Final Approval and apply for an award of attorneys' fees and costs and Service Award for the Class Representative. The Settlement satisfies all Final Approval criteria. Currently, there are zero objections and two Settlement Class members have opted-out. Supp. Admin. Decl. ¶¶ 8-9. This overwhelmingly positive response affirms the Court's initial conclusion that the Settlement is fair, reasonable, and adequate. Class Counsel has fully evaluated the strengths, weaknesses, and equities of the Parties' respective positions, and believe the Settlement fairly resolves their differences. The Court should grant Final Approval of the Settlement and Class Counsel's Application for Attorneys' Fees, Costs, and Service Awards, as well as approving the Costs of Claims Administration.

## II.    INCORPORATION BY REFERENCE

In the interest of judicial efficiency, for factual and procedural background on this case, Plaintiff refers this Court to and hereby incorporate Plaintiff's Unopposed Motion for Preliminary Approval of Class Action Settlement (ECF No. 30) and its accompanying exhibits.

## III.    SUMMARY OF THE SETTLEMENT

Plaintiff seeks Final Approval for the Settlement Class defined as "All persons who were sent written notification by Leonard's Express that their Private Information was potentially

compromised as a result of the Incident that occurred on or around November 30, 2023." Agreement ¶ 1.26. Excluded from the Settlement Class are: "(i) Leonard's Express, the Related Parties, and their officers and directors; (ii) all Settlement Class Members who timely and validly request exclusion from the Settlement Class; (iii) any judges assigned to this case and their staff and family; and (iv) any other Person found by a court of competent jurisdiction to be guilty under criminal law of initiating, causing, aiding or abetting the criminal activity occurrence of the Incident or who pleads nolo contendere to any such charge." *Id*.

### A.    Settlement Consideration

Defendant will pay all Valid Claims with a maximum aggregate amount of $325,000.00. *Id*. ¶ 2.2. Settlement Class Members may elect one of two types of Cash Payments and Credit/Data Monitoring. *Id*. Defendant is also paying the costs of settlement administration and has committed to implementing and/or maintaining valuable security improvements. *Id*. ¶ 2.4. Defendant negotiated Plaintiff's Service Award and attorneys' fees and costs to Class Counsel separately, as more fully addressed below. *Id*. ¶ 15.

#### 1.  *Cash Payments:*

*Cash Payment A – Documented Out-of-Pocket Losses.* Settlement Class Members may elect a Cash Payment for up to $650.00 (subject to pro rata adjustment based on total Valid Claims) per Settlement Class Member upon presentation of reasonable documented Incident-related losses. *Id*. ¶ 2.2. To receive payment, Settlement Class Members must elect Documented Out-of-Pocket Expenses on the Claim Form attesting under penalty of perjury to incurring documented losses and submitting reasonable supporting documents. *Id*. They shall not be reimbursed for expenses reimbursed for the same expenses by another source. *Id*. ¶ 2.3. If a Settlement Class Member does not submit reasonable documentation supporting a loss, or if the Claim is rejected by the Settlement

Administrator for any reason, and the Settlement Class Member fails to cure, the Claim will be deemed invalid, and Defendant will not be obligated to pay the claim. *Id*. ¶ 2.2.1.

*Cash Payment B – Flat Cash Payment.* As an alternative to Documented Out-of-Pocket Expenses and credit monitoring (see below), a Settlement Class Member may elect to receive an Alternative Cash Payment, which is a flat cash payment in the amount of $29.00 (subject to *pro rata* adjustment upon total Valid Claims). *Id*. ¶ 2.2.

### 2.    *Credit Monitoring*

As an alternative to electing a Cash Payment, Settlement Class Members may elect one year of one bureau credit monitoring. *Id*.

### 3.    *Pro Rata Adjustments on Cash Payments*

Settlement Class Member Cash Payments will be subject to a pro rata decrease from the Settlement Fund if the amount of Valid Claims for Documented Out-of-Pocket Losses and Alternative Cash Payments exhausts the $325,000 aggregate cap. Cash Payments thus may be reduced pro rata accordingly. *Id*. ¶ 2.2.

### 4.    *Information Security Improvements*

Defendant has agreed to provide sufficient information to demonstrate that it has implemented various security related measures. Costs associated with these improvements will be paid by Defendant separate and apart from other settlement benefits. *Id*. ¶ 2.4.

### 5.    *Releases*

The Releasing Parties will release the Released Parties for claims relating to the Incident. Regardless of whether they submit a Claim, Settlement Class Members who do not opt-out of the Settlement will release all claims, whether known or unknown, again Defendant and the other Released Parties. *Id*. ¶ 6.

IV.    **NOTICE PROGRAM, CLAIMS, OPT-OUTS, AND OBJECTIONS**

A.    **Notice Program Satisfies Rule 23 and Due Process**

The Settlement Administrator implemented the Notice Program. *See generally* Admin. Decl.; Declaration of Jarrett L. Ellzey ("Counsel Decl.") ¶ 33. Postcard Notices were sent to 6,488 Settlement Class members for whom a physical address was provided after identifying and removing duplicates. *Id.* ¶¶ 5–7, 13. A Long Form Notice with greater detail is also available on the Settlement Website. Admin. Decl. ¶ 10. Postcard Notices returned as undeliverable were re-mailed to any new address available through USPS information or to better addresses that were found using a third-party address lookup service. *Id.* ¶ 14. As of May 22, 2025, individual notice efforts have reached approximately 90.21% of the Settlement Class members. *Id.* ¶ 15.

The Postcard Notice clearly and concisely summarized the Settlement and the Settlement Class members' legal rights and directed them to the Settlement Website for additional information, including links to downloadable versions of the Operative Complaint, Settlement Agreement, Preliminary Approval Order, Long Form Notice, and Claim Form, along with Frequently Asked Questions ("FAQs") and Important Dates pages. *Id.* ¶ 10–11, Ex. A, B.

The Settlement Administrator established a dedicated Settlement Website for Settlement Class Members to obtain detailed information about the Action, review important documents and relevant dates and receive contact information for the Settlement Administrator. *Id.* ¶ 9–11. As of May 22, 2025, there have been 2,794 views of the Settlement Website and 459 unique visitors. *Id.* ¶ 11. The Settlement Administrator also established a 24-hour, toll-free support line with Interactive Voice Response ("IVR") capabilities for the Settlement Class to call to receive general and detailed information about the Settlement; answers to frequently asked questions, and information relating to a Class Member's options under the terms of the Settlement. *Id.* As of May

22, 2025, there have been 59 calls to the toll-free line. *Id*.

The Notice Program provided was "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 314 (1950). The Notice conveyed the required information to the Settlement Class, allowing reasonable time for those interested in making an appearance to do so. "There are no rigid rules to determine whether a settlement notice to the class satisfies constitutional or Rule 23(e) requirements." *O'Donnell v. Harris Cnty., Texas*, No. CV H-16-1414, 2019 WL 4224040, at *26 (S.D. Tex. Sept. 5, 2019). Instead, a settlement notice need only satisfy the broad reasonableness standards imposed by due process. *Id*. Here, the Notice adequately informed Settlement Class Members of the nature of the Action, the Settlement Class definition, the claims at issue, the Settlement Class member' rights to object or opt-out, and/or enter an appearance through an attorney, and the binding effect of Final Approval and class judgment. *See* Admin. Decl., Ex. A–C. The Notice utilized clear and concise language that is easy to understand. Moreover, the Settlement Administrator—with the assistance of the Parties—took all necessary measures to ensure Notice reached as many of the Settlement Class Members as possible. Direct notice is estimated to have reached 90.21% of the Settlement Class. *Id.* ¶ 15. Such notice complies with the program approved by this Court in its Preliminary Approval Order, meets due process considerations, and weighs in favor of Final Approval.

### B.    Claims, Opt-Outs, and Objections

The Claim submission process was structured to give all Settlement Class members adequate time to review the Settlement terms, submit their Claims, and decide whether to opt-out of or object to the Settlement. Counsel Decl. ¶ 34. The opt-out and objection deadline was June 3, 2025. Order Granting Preliminary Approval of Class Action Settlement, p. 7 (ECF No. 31). As of June 9, 2025, the Settlement Administrator has received 190 Claim Forms, 2 opt-out requests and

zero objections. Supp. Admin. Decl. ¶¶ 4, 8-9. Claim Forms are still subject to ongoing audits, including assessment of each Claim's validity, supporting documentation and review for duplicate submissions. Admin. Decl. ¶¶ 16–20; Supp. Admin. Decl. ¶ 7. Validation efforts have revealed 20 fraudulent claims and five deficient claims due to either incompatible option selections or invalid or missing supporting documentation as of June 9, 2025. *Id.* ¶¶ 5. Class Counsel can update the Court with the final results of the Notice Program at the Final Approval Hearing.

## V.    SETTLEMENT CLASS CERTIFICATION

The Court granted Preliminary Approval on February 19, 2025. ECF No. 31. In the Court's Preliminary Approval Order, the Court, for settlement purposes only, preliminarily certified the Action as a class action for the Settlement Class, finding prerequisites of numerosity, commonality, typicality, adequacy, predominance, and superiority were satisfied pursuant to Fed. R. Civ. P. 23(a) and (b)(3), and that the Settlement Class should be certified pursuant to Fed. R. Civ. P. 23(b)(2). The Court appointed Plaintiff as Class Representatives pursuant to Fed. R. Civ. P. 23(e)(2)(A), and Jarrett L. Ellzey and Leigh Montgomery of Ellzey Kherkher Sanford Montgomery, LLP, as Class Counsel. The Court also appointed CPT Group as the Settlement Administrator and approved the Notices and Claim Form. Because nothing has changed regarding class certification, the Court should finally certify the Settlement Class. For efficiency, Plaintiff incorporates by reference the Settlement Class certification arguments from the Motion for Preliminary Approval. ECF No. 30 at p. 8–17.

## VI.   THE PROPOSED SETTLEMENT IS FAIR, REASONABLE AND ADEQUATE

### A.    Legal Standard for Final Approval

The final approval standard for a proposed class action settlement under Fed. R. Civ. P. 23(e)(2) is whether it is "fair, reasonable and adequate." The Rule 23(e)(2) factors are whether:

(A) the class representative and class counsel have adequately represented the class;

(B) the proposal was negotiated at arm's length;
(C) the relief provided for the class is adequate, taking into account:
    (i) the costs, risks, and delay of trial and appeal;
    (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class member claims;
    (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
    (iv) any agreement required to be identified under Rule 23(e)(3); and
(D) the proposal treats class members equitably relative to each other.

The Second Circuit also applies its own factors (the "*Grinnell* factors") to determine whether a settlement is fair, adequate, and reasonable, including: (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation. *In re Initial Pub. Offering Sec. Litig.*, 260 F.R.D. 81, 88 (S.D.N.Y. 2009) (citing *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974)).

Because the Rule 23 and the *Grinnell* factors overlap, Second Circuit courts often combine them. *In re Payment*, 330 F.R.D. at 29 ("Indeed, there is significant overlap between the *Grinnell* factors and the Rule 23(e)(2)(C–D) factors, as they both guide a court's substantive, as opposed to procedural, analysis."); *see also* Fed. R. Civ. P. 23(e)(2), Committee Notes to 2018 amendments ("The goal of this amendment is not to displace any [circuit case-law] factor, but rather to focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal.").

The public interest strongly favors the voluntary settlement of class actions. *Wal-Mart*

*Stores, Inc. v. Visa U.S.A., Inc*., 396 F.3d 96, 116 (2d Cir. 2005). Here, the Court should find it is likely to conclude the Settlement is fair, reasonable, and adequate under both the Rule 23(e)(2) and *Grinnell* factors and grant Preliminary Approval to allow Notice to issue to the Settlement Class.

The Settlement Class's response, (only two opt-outs and zero objections) also emphasizes the Settlement is fair, reasonable and adequate, and demonstrates that the second *Grinnell* factor—the reaction of the class to the settlement—weighs in favor of final approval. Thus, final approval should be granted.

### B.    Class Representative and Class Counsel Have Adequately Represented the Settlement Class.

As with Rule 23(a) adequacy of representation requirement, plaintiffs must establish that: (1) the there is no antagonism or conflict of interest between the class representatives and other members of the class; and (2) counsel and the class representatives are competent, willing, and able to protect the interests of absent class members. *Cordes & Co. Fin. Servs. v. A.G. Edwards & Sons, Inc*., 502 F.3d 91, 99 (2d Cir. 2007). Here, the Settlement Class members are all potentially affected by the same Incident as the Class Representative, and thus the Settlement Class Members and Class Representative have common interests. Moreover, the Class Representative has ably represented the Settlement Class, maintaining contact with Class Counsel, reviewing and approving pleadings, assisting in the investigation of the Action, remaining available for consultation throughout settlement negotiations, reviewing the Settlement documents, and answering Class Counsel's questions. Counsel Decl. ¶ 27–28.

Class Counsel have also vigorously pursued the Settlement Class's interests in securing a Settlement bringing immediate, valuable benefits, while avoiding the risks of continued litigation. *Id*. ¶ 29–30. To do so, they leaned on their extensive experience in data breach litigation, their

detailed investigation of this particular matter, and informal discovery exchanged during the course

of their negotiations. *Id.* As such, Fed. R. Civ. P. 23(e)(2)(A) supports Final Approval.

### C. The Settlement Results From Arms-Length Negotiations and Without Fraud or Collusion.

The Second Circuit recently abrogated the "presumption of fairness, adequacy, and

reasonableness" attaching to a class settlement "reached in arm's-length negotiations between

experienced, capably counsel after meaningful discovery." *See Moses v. New York Times Co.*, 79

F.4th 235 (2d Cir. 2023). However, "the proceedings [should be] free of collusion and undue

pressure." *See In re Payment Card Interchange Fee and Merchant Discount Antitrust Litig.*, 827

F.3d 223, 235 (2d Cir. 2016).

Here, there is no evidence of fraud or collusion. To begin with, both Plaintiff's and

Defendant's counsel are highly experienced in settlement of class cases. After a full exchange of

information related to liability and damages, the Parties negotiated a fair and reasonable settlement

similar to or exceeding the value of other similar data breach class action settlements. Counsel

Decl. ¶ 30. Thereafter, the Parties spent weeks negotiating, drafting, and finalizing the finer points

of the Settlement in the Agreement. *Id.* Moreover, the proposed Settlement does not favor any

Settlement Class member over any other, weighing against any evidence of fraud or collusion and

favoring approval. *See Vaughn v. Am., Honda Motor Co.*, 627 F. Supp. 2d 738, 748 (E.D. Tex.

2007). Accordingly, Federal Rule of Civil Procedure 23(e)(2)(B) is satisfied, and the third *Grinnell*

factor—the stage of the proceedings and the amount of discovery completed—weighs in favor of

settlement approval.

### D. The Settlement provides substantial relief to the Settlement Class, in light of the uncertainty of prevailing on the merits, the effectiveness of the proposed distribution of relief, and the attorneys' fees sought. (Fed. R. Civ. P. 23(e)(2)(C)).

The third and most important Rule 23(e)(2)(c) factor weighs heavily in favor of granting

Preliminary Approval and overlaps with several of the *Grinnell* factors (including the first factor—the complexity, expense and likely duration of the litigation; fourth factor—the risks of establishing liability; fifth factor—the risks of establishing damages; and sixth factor—the risks of maintaining the class through the trial). The Settlement guarantees Settlement Class Members real relief for harms and protections from potential future fall-out from the Incident. First, all Settlement Class Members eligible for one year of one bureau credit monitoring. Agreement ¶ 2.1. Second, Settlement Class Members may Claim reimbursement for Documented Out-of-Pocket Expenses (up to $650.00 for documented losses, subject to *pro rata* adjustment) or Alternative Cash Payment ($29.00 flat cash payment, subject to *pro rata* adjustment). Agreement ¶ 2.2. These benefits are consistent with, and in fact exceed, other approved settlements. Counsel Decl. ¶ 30.

Although Plaintiff is confident in the merits of his claims, the litigation risks cannot be disregarded. Besides the potential that either side will lose at trial, Plaintiff anticipates substantial additional costs if litigation continues, including experts. Plaintiff would need to defeat a motion to dismiss, counter a later motion for summary judgement, and both gain and maintain certification of the Settlement Class, with a near inevitable interlocutory appeal attempt. As at least one court has found, because the "legal issues involved in [in data breach litigation] are cutting-edge and unsettled . . . many resources would necessarily be spent litigating substantive law as well as other issues." *ln re Target Corp. Customer Data Sec. Breach Litig.*, No. 14-2522, 2015 WL 7253765, at *2 (D. Minn. Nov. 17, 2015).

The Settlement's value is guaranteed in the face of uncertainty in prevailing on the merits. While Plaintiff strongly believes in the merits, he also understands that Defendant asserts a number of potentially case-dispositive defenses. In fact, if litigation continued, Plaintiff would likely have to immediately survive a motion to dismiss. Due at least in part to their cutting-edge nature and

the rapidly evolving law, data breach cases generally face substantial hurdles—even just to make it past the pleading stage. *See, e.g., Logan v. Marker Group, Inc.*, 4:22-CV-00174, 2024 WL 3489208 (S.D. Tex. July 18, 2024) (dismissing all but one claim). Class certification is another hurdle. *See, e.g.*, *In re Blackbaud, Inc., Customer Data Breach Litig.*, No. 3:20-mn-02972-JFA, 2024 WL 2155221 (D.S.C. May 14, 2024) (denying class certification in a data breach case). This analysis is relevant to the ninth *Grinnell* factor—the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation—and weighs in favor of final approval.

Through the Settlement, Plaintiff and Settlement Class members gain significant benefits without risking not receiving any relief at all if the case continues. The Settlement provides immediate and substantial benefits to over 6,000 Settlement Class members—comparable to the relief and benefits obtained in other data breach class actions—and on a much quicker timeline.

Relevant to the results obtained is the relief afforded in similar data breach class actions. A few recent examples of approved data breach settlements from around the country, which demonstrate how the instant Settlement compares very favorably, and exceeds many similar common fund data breach settlements, include: *See, e.g., Kondo v. Creative Serv.*, No. 1:22-cv-10438-DJC, ECF No. 34, 39 (D. Mass. Sept. 7, 2023) ($1,200,000 for approx. 165,000 members); *Julien v. Cash Express, LLC*, No. 2022-CV-221 (Putnam Cty., Tenn.) ($850,000 common fund for 106,000 class members); *Tucker v. Marietta Area Health Care*, No. 2:22-CV-00184, ECF No. 35, 38 (S.D. Ohio Dec. 8, 2023) ($1,750,000 for approx. 214,000 members); *Mendoza, et al. v. Crystal Bay Casino LLC*, No. 3:23-cv-00092-MMD-CLB, ECF No. 39, 46 (D. Nev. Aug. 5, 2024) ($675,000 for approx. 94,000 members); *Reynolds v. Marymount Manhattan College*, No. 1:22-cv-06846, ECF No. 58, 73 (S.D.N.Y.) ($1,300,000 common fund for approx. 191,000 class

members). Likewise, as discussed in detail below, the amount allocated to attorneys' fees is consistent with awards granted in the Second Circuit.

> **E.      The Settlement treats Settlement Class Members equitably. (Fed. R. Civ. P. 23(e)(2)(D)).**

Here, the Settlement does not improperly discriminate between any segments of the Settlement Class. All Settlement Class members are eligible to make a Claim for a Cash Payment and Credit/Data Monitoring, subject to proper claim completion and validation by the Settlement Administrator. Accordingly, this factor also weighs in favor of Final Approval.

> **F.      The remaining *Grinnell* factors also weigh in favor of Final Approval.**

The remaining *Grinnell* factors also support Final Approval. As to the third factor (stage of the litigation and available discovery), the Settlement was reached only after extensive investigation by the Parties and an informal exchange of information such that Class Counsel could fully understand the strengths and weaknesses of Plaintiff's claims and Defendant's defenses. Where Parties possess ample information with which to evaluate the merits of competing positions, a lack of formal discovery will not prevent settlement approval. *Ayers v. Thompson*, 358 F.3d 356, 369 (5th Cir. 2004); *Cotton*, 559 F.2d at 1331.

The eighth *Grinnell* factor—the range of reasonableness of the settlement in fund in light of the best possible recovery—also weighs in favor of final approval because the settlement fundamentally serves the goals and purposes sought in the Complaint. *See* Plaintiff's Original Class Action Complaint and Jury Demand (ECF No. 1) ¶¶ 11–14 (seeking to remedy harms caused by data breach, including compensatory damages, out-of-pocket costs, and injunctive relief including improvements to Defendant's data security systems). Accordingly, the seventh *Grinnell* factor—the ability of Defendant to withstand a greater judgment—does not weigh against settlement because the goals of the lawsuit were met through the settlement. *Ying v. All-Ways*

*Forwarding of N.Y. Inc.*, No. 20-CV-6242 (ENV)(MMH), 2025 WL 968586, at *10 (E.D.N.Y. Mar. 31, 2025) (noting that where the seventh *Grinnell* factor is neutral, it "does not preclude the Court from approving the settlement"). Plaintiff approves of its terms, as do Class Counsel, based on their deep experience litigating data breach and other class actions. Counsel Decl. ¶¶ 14–19, 32.

With each Rule 23(e)(2) and the *Grinnell* factors favoring Final Approval, the Settlement should be approved as fair, reasonable, and adequate.

## VIII.   APPLICATION FOR ATTORNEYS' FEES, COSTS, AND SERVICE AWARDS

Pursuant to the Settlement and the Notices, and consistent with recognized class action practice and procedure, Class Counsel respectfully request an award of attorneys' fees and costs of $108,225.00, which is equal to 33.3% of $325,000.00, maximum aggregate of Documented Out-of-Pocket Losses and Alternative Cash Payments and includes $837.22 in reasonable litigation costs. Counsel Decl. ¶¶ 7, 12, 37-38. Second Circuit precedent governing settlements confirms this Court has discretion to use either the percentage of the fund (or, in this case, percentage of the cap) or lodestar method to determine whether the requested fee award is appropriate. *Zink v. First Niagara Bank, N.A.*, No. 13-CV-01076-JJM, 2016 WL 7473278, at *5 (W.D.N.Y. Dec. 29, 2016) (not reported). Class Counsel seek an award under the percentage method, a method embraced in the Second Circuit.

The award requested is reasonable and well within the range of fee awards in this Circuit. *See Ying*, 2025 WL 968586, at *8 (noting that attorneys' fees in the amount of one-third of the settlement fund is "within the range of fee award percentages that courts in this Circuit have approved"). Also, the requested litigation costs and Service Awards for the Class Representative sought are reasonable. Finally, Plaintiff requests that the Court approve of and award CPT Group

its Costs of Claims Administration of $25,500.00. Admin. Decl. ¶ 24; Agreement ¶¶ 1.6, 2.6, 3.2 (ECF No. 30-1).

### A.    The Law Awards Class Counsel Fees Created Through Their Efforts.

Fed. R. Civ. P. 23(h) authorizes awards in class action settlements for "reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Under the well-settled "common fund" doctrine, attorneys who achieve a recovery for a class via a common fund are entitled to an award of attorneys' fees and costs from that fund as compensation for their work. *See*, *e.g.*, *Boeing Co. v. Van Gemert*, 444 U.S. 472 (1980); *Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375 (1970). This case involves a "claims made" fund, but some courts in the Western District of New York have determined that claims-made funds should be treated like common funds for purposes of awarding attorneys' fees as a percentage of the fund. *See Zink*, 2016 WL 7473278, at *7 ("The entire Fund, and not some portion thereof, is created through the efforts of counsel at the instigation of the entire class. An allocation of fees by percentage should therefore be awarded on the basis of the total funds made available, whether claimed or not.") (citing *Masters v. Wilhelmina Model Agency, Inc.*, 473 F.3d 423, 437 (2d Cir. 2007)). As noted in *Masters*:

> Our own cases refer to "percentage *of the fund*," and "percentage *of the recovery*," We take these references to be to the whole of the Fund. Use of the entire Fund as a basis for the computation does not necessarily result in a "windfall" because the court may always adjust the percentage awarded in order to come up with a fee it deems reasonable in light of the *Goldberger* factors.

473 F.3d at (internal citations omitted) (emphasis in original).

"What constitutes a reasonable fee is properly committed to the sound discretion of the district court which is intimately familiar with the nuances of the case." *Zink*, 2016 WL 7473278, at *5 (internal editing marks omitted). To determine a reasonable fee, Courts in the Second Circuit are "free to rely on a percentage of recovery determination, and/or to employ the lodestar method

(multiplying the attorneys' billable hours by their reasonable billable rate)." *Id*. (quoting *In re Eastman Kodak ERISA Litigation*, 2016 WL 5746664, *2 (W.D.N.Y. 2016) (Larimer, J.)). "However, the recent trend in the Second Circuit has been to apply the percentage-of-recovery method and loosely use the lodestar method as a baseline or cross check." *Id*.

Regardless of the method of calculation used, the following factors—referred to as the *Goldberger* factors—may be used to assist the Court in assessing the reasonableness of attorneys' fees: (1) the time and labor expended by counsel; (2) the size and complexity of the matter; (3) the risks involved in the litigation; (4) the quality of representation; (5) the relationship between the requested fee and the settlement; and (6) considerations of public policy. *Id*; *Ying*, 2025 WL 968586, at *13–14 (citing *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 50 (2d Cir. 2000)). Where the Court chooses to use the lodestar method as a mere "cross-check" of the percentage-of-recovery method, "the hours documented by counsel need not be exhaustively scrutinized by the district court," but instead "the reasonableness of the claimed lodestar can be tested by the court's familiarity with the case." *Id*. at *5 (citing *Davis v. J.P. Morgan Chase & Co*., 827 F. Supp. 2d 172, 183 (W.D.N.Y. 2011) (Larimer, J.)).

### B.    The Percentage of Recovery Is Appropriate.

Fed. R. Civ. P. 23(h) authorizes awards in class action settlements for "reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Under the well-settled "common fund" doctrine, attorneys who achieve a recovery for a class via a common fund are entitled to an award of attorneys' fees and costs from that fund as compensation for their work. *See*, *e.g.*, *Boeing Co. v. Van Gemert*, 444 U.S. 472 (1980); *Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375 (1970). "The common fund doctrine 'rests on the perception that persons who obtain the benefit of a lawsuit without contributing to its cost are unjustly enriched at the successful

litigant's expense.'" *Christensen v. Kiewit-Murdock Inv. Corp.*, 815 F.2d 206, 211–12 (2d Cir. 1987) (quoting *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478, 100 S.Ct. 745, 62 L.Ed.2d 676 (1980)). Courts in the Western District of New York have recognized that claims-made funds should be treated no differently from common funds for purposes of applying a percentage-of-the-fund analysis.  *Zink*, 2016 WL 7473278, at *8 (internal editing marks omitted). No different than with a common fund, the Class Members in this case are also enriched by the efforts of Plaintiff and Plaintiff's counsel.

"What constitutes a reasonable fee is properly committed to the sound discretion of the district court which is intimately familiar with the nuances of the case." *Id*. at *5 (internal editing marks omitted). The fee request in this case represents approximately one-third of the aggregate cap of Documented Out-of-Pocket Expenses and Alternative Cash Payment. This amount is in line with fee awards in the Second Circuit. *See Ying v. All-Ways Forwarding of N.Y. Inc*., No. 20-CV-6242 (ENV)(MMH), 2025 WL 968586, at *14 (E.D.N.Y. Mar. 31, 2025) ("Courts in this Circuit typically approve fee awards representing one-third of the total recovery in collective actions.") (citing *Flores v. CGI Inc.*, 2022 WL 13804077 at *10, No. 22-CV-350 (KHP) (S.D.N.Y. Oct. 21, 2022) (collecting cases); *Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 477 (S.D.N.Y. 2013) (citing *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. of Albany*, 522 F.3d 182 (2d Cir. 2008)); *See also Noto v. 22nd Century Grp., Inc*., No. 19-CV-01285-JLS-MJR, 2023 WL 7107840, at *11 (W.D.N.Y. Oct. 17, 2023) (Magistrate, J., report and recommendation) (citing *In re Facebook, Inc. IPO Sec. & Derivative Litig*., 2015 WL 6971424, at *9 (S.D.N.Y. Nov. 9, 2015) (awarding 33% of $26.5 million settlement), *aff'd sub nom*., 674 F. App'x 37 (2d Cir. 2016); *City of Providence v. Aéropostale, Inc*., 2014 WL 1883494, at *20 (S.D.N.Y. May 9, 2014) (awarding 33% of $15 million settlement) *aff'd sub nom. Arbuthnot v. Pierson*, 607 F. App'x 73 (2d Cir.

2015); *In re Giant Interactive Grp., Inc. Sec. Litig.*, 279 F.R.D. 151, 164-65 (S.D.N.Y. 2011) (approving 33% fee); *Fogarazzo v. Lehman Bros.*, 2011 WL 671745, at *4 (S.D.N.Y. Feb. 23, 2011) (awarding one-third of $6.75 million settlement)); *Teoba v. TruGreen Landcare, L.L.C.*, No. 10-CV-6132, 2015 WL 13424068, at *1–3 (W.D.N.Y. July 29, 2015) ("The fee sought represents approximately 31% of the total settlement fund. A percentage approximating one third of the settlement—using the total settlement fund as the denominator—has been found to be reasonable in similar cases.") (citing *Chambery v. Tuxedo Junction Inc*., No. 12-cv-6539 EAW, 2014 WL 3725157, at *9 (W.D.N.Y. July 25, 2014) ("An award of one-third of the total settlement fund is not unreasonable on its face."); *Henry v. Little Mint, Inc*., No. 12 Civ. 3996(CM), 2014 WL 2199427, at *15 (S.D.N.Y. May 23, 2014) (FLSA case in which the court commented that a fee request "of one-third (33.33%) is in line with decisions in this Circuit which have routinely awarded one-third or more of the settlement fund as attorneys' fees in wage and hour cases")).

Notably, this case involves a key feature that distinguishes it from other percentage-of-recovery cases and strengthens the request for fees and the analysis discussed below. This key feature is that the attorneys' fees and service award in this case were negotiated separately from the amount of recovery for the class. Counsel Decl. ¶ 31. The Settling Parties did not discuss the payment of attorneys' fees, costs, expenses and/or any service award to Plaintiff reflected in Paragraphs 7.2 and 7.3 of the Agreement until after the substantive terms of the settlement had been agreed upon, other than the agreement that Defendant would not object to a request for reasonable attorneys' fees, costs, expenses, and a service award to Plaintiff as may be ordered by the Court. Agreement ¶ 7.1. Counsel for the parties then negotiated and agreed to amounts for attorneys' fees and service awards. *Id*.

### C.    Application of the Relevant Factors

Plaintiff seeks this Court's approval of fees in the amount of $108,225. This is an amount equal to one-third of the aggregate cap of Documented Out-of-Pocket Expenses and Alternative Cash Payment. Agreement ¶¶ 2.2, 7.2. The amount of fees requested is reasonable and comparable to other award percentages in common fund cases.

In addition, the six *Goldberger* factors all support Plaintiff's fee request, as fully discussed below. Therefore, Plaintiff respectfully requests that this Court approve of Plaintiff's fee request.

### 1.    *The Time and Labor Expended by Counsel.*

Class Counsel's coordinated work paid dividends for the Settlement Class. Class Counsel's time and resources devoted to prosecuting and settling this Action justify the requested fee. *See* Counsel Decl. ¶¶ 7–12, 29–30. Prosecuting and settling these claims demanded considerable time and labor, making this fee request reasonable. *Id*. The time and labor factor turns on more than the number of hours worked because an early settlement can signal counsel's efficiency and effectiveness in avoiding lengthy litigation. *See Burnett v. CallCore Media, Inc.*, No. 4:21-cv-03176, 2024 WL 3166453, at *6 (S.D. Tex. June 25, 2024), It is more important to emphasize the value of the hours worked.

To date, Class Counsel have vigorously prosecuted this Action against Defendant, including time spent preparing the lawsuit, investigating Plaintiff's claims, engaging in informal discovery, preparing for and participating in settlement negotiations, negotiating and drafting settlement and Class notice documents, seeking preliminary approval of the parties' settlement, complying with the Preliminary Approval Order to ensure the Notice Program and Claim process were implemented, preparing the current Motion and otherwise pursuing relief on behalf of

Plaintiff and the Class Members. Counsel Decl. ¶ 8.[2] Time will also be spent preparing for and attending the Final Approval Hearing, followed by substantial time working with the Settlement administration should Final Approval be granted to ensure Valid Claims are paid and the Settlement implemented. *Id.* ¶ 9. Class Counsel estimates engaging in at least 50 more hours finalizing this case. *Id.* All of the efforts of Class Counsel were essential to achieving the Settlement. *Id.*

As discussed above, Courts regularly approve attorneys' fees equivalent to one-third of the common fund. In addition, attorneys' fee awards may exceed the amount calculated using the lodestar method by many times. *Ying*, 2025 WL 968586, at *15 ("Courts regularly award lodestar multipliers of up to eight times the lodestar, and in some cases, even higher multipliers.") (citing *Beckman*, 293 F.R.D. at 481 (collecting cases showing courts awarding lodestar multipliers between two and eight)); *See also Noto*, 2023 WL 7107840, at *11 (citing *Lopez v. Fashion Nova*, No. 20 CV 9238, 2021 WL 4896288, at *3 (S.D.N.Y. Oct. 19, 2021) (noting that lodestars of eight times are regularly awarded in the Second Circuit); *Wal-Mart Stores, Inc. v. Visa USA, Inc.*, 396 F.3d at 123 (upholding 3.5 multiplier) (citing cases)).

In sum, the fees requested in this case are inline with the time and labor expended by counsel to achieve the results obtained and are consistent with fee awards in other class action cases.

### 2.    *The Size and Complexity of the Matter.*

Class Counsel's legal work has conferred a substantial benefit on a sizeable Settlement Class in the face of significant litigation obstacles. Postcard Notices were sent to 6,488 Settlement Class Members. Admin. Decl. ¶¶ 5–7, 13. As of May 22, 2025, the Settlement Administrator has

---

[2] Should the Court seek more information regarding Class Counsel's lodestar, such information will be provided to the Court for *in camera* consideration

received 167 Claim Forms, 2 opt-out requests and zero objections. Admin. Decl. ¶¶ 17, 21–22.

Further, Courts routinely recognize the novelty and difficulty of the questions present in a case as a significant factor to be considered in making a fee award. Data breach class actions are notoriously risky and complex cases that present novel issues of law and fact as data security continues to develop and evolve. *Fox v. Iowa Health Sys.*, No. 3:18-cv-00327, 2021 WL 826741, at \*5 (W.D. Wis. Mar. 4, 2021) ("Data breach litigation is evolving; there is no guarantee of the ultimate result . . . [they] are particularly risky, expensive, and complex."); *In re Sonic Corp. Customer Data Sec. Breach Litig.*, No. l:17-md-2807, 2019 WL 3773737, at \*7 (N.D. Ohio Aug. 12, 2019) (recognizing that "[data breach litigation is complex and risky. This unsettled area of law often presents novel questions for courts. And of course, juries are not always predictable."). *See also, e.g., Logan*, 2024 WL 3489208 at \*13 (dismissing all but one claim); *In re Blackbaud*, 2024 WL 2155221, at \*28 (denying class certification in a data breach case). Accordingly, this factor weighs heavily in support of the requested attorneys' fee award.

### 3. *The Risks Involved in the Litigation.*

Given the significant litigation risks faced in this case, the Settlement represents a successful result, affording them meaningful Settlement benefits designed to meet the typical repercussions faced by consumers following a data breach. The risk involved is emphasized by the fact that, historically, data breach class actions face substantial hurdles in surviving the class certification stage. *See, e.g.*, *In re Blackbaud,* 2024 WL 2155221 at \*1 (denying motion for class certification); *Fulton-Green v. Accolade,* No. 18-274, 2019 WL 4677954, at \*8 (E.D. Pa. Sept. 24, 2019) (noting data breach class actions are "a risky field of litigation because [they] are uncertain and class certification is rare"); *In re Hannaford Bros. Co. Customer Data Sec. Breach Litig.*, 293 F.R.D. 21 (D. Me. 2013). Further, maintaining class certification through trial is another overarching risk. Counsel Decl. ¶ 35.

Considering Defendant has compelling defenses, continuing to pursue this case posed a significant risk for Plaintiff and the Settlement Class, and makes litigating data breach cases less desirable. *Id.* Class Counsel undertook this case on a completely contingent fee basis, with no guarantee of recovery of fees or expenses. *Id*. ¶ 36. Class Counsel were obligated to provide sufficient attorney and paralegal resources to prosecute the action, while facing the possibility that they would not receive any fees. *Id*. Therefore, the risks of the litigation weigh in favor of Class Counsel's requested fee.

### 4.    *The Quality of Representation.*

As outlined above, Class Counsel have achieved a substantial result for the Class, owing to the work they put into this case and their experience in prosecuting data breach cases and other consumer protection litigation and class actions. Class Counsel's extensive experience and qualifications are detailed in Class Counsel's Declaration. Counsel Decl. ¶ 13–22, Ex. 1.

Although Class Counsel's qualifications and performance in this case are sufficient to support the requested fee, there are other factors that demonstrate the quality of representation. Class Counsel agreed to prosecute this case entirely on a contingent fee basis and assumed a significant risk of nonpayment or underpayment. *Id.* ¶ 36. That risk showcases Class Counsel's skill and warrants an appropriate fee. *Burnett*, 2024 WL 3166453 at *7 ("The risk of 'receiving little to no recovery is a major factor in considering an award of attorneys' fees.'" (citation omitted)). In addition, in evaluating the quality of representation by Class Counsel, the Court should also consider opposing counsel. Defendant is represented by extremely capable counsel who are worthy, highly competent adversaries. Couunsel Decl. ¶ 35.

Accordingly, this factor supports the fee request in this case.

### 5.    *The Relationship Between the Requested Fee and the Settlement.*

In assessing the relationship between the requested fee and the settlement in this case, it is

important to note that the parties did not discuss the payment of attorneys' fees, costs, expenses and/or any service award to Plaintiff until after the substantive terms of the settlement had been agreed upon, other than the agreement that Defendant would not object to a request for reasonable attorneys' fees, costs, expenses, and a service award to Plaintiff as may be ordered by the Court. Agreement ¶ 7.1. This type of arrangement helps to ensure adequate recovery to Plaintiff and the putative class and reduce the impact of attorneys' fees, costs and service awards.

In addition, the attorneys' fee award sought here is within the range of fees typically awarded in similar cases in the Second Circuit. As discussed above, the fee request in this case represents approximately one-third of the aggregate cap of Documented Out-of-Pocket Expenses and Alternative Cash Payment, which represents an amount that is consistent with fee awards in the Second Circuit. *See e.g.*, *Ying*, 2025 WL 968586, at *14 ("Courts in this Circuit typically approve fee awards representing one-third of the total recovery in collective actions.")

The amount of fees requested in this case is also in line with fee awards in other data breach cases in which attorneys' fees of 33.33% of the settlement fund or higher have been awarded: *Garza v. HealthAlliance, Inc.*, No. 72450/2023 (NY Sup. Ct., Westchester Cty.) (approving 35% of the settlement fund); *In re Fortra File Transfer Software Data Sec. Breach Litig.*, No. 24-MD-03090, 2025 WL 457896, at *11-12 (S.D. Fla. Feb. 11, 2025) (approving 33.33% of the settlement fund); *In re Planet Home Lending, LLC Data Breach*, No. 3:24-cv-127 (KAD) (D. Conn.), ECF No. 48 (same); *In re CorrectCare Data Breach Litig.*, No. 5:22-319-DCR, 2024 WL 4211480, at *4 (E.D. Ky. Sept. 14, 2024) (same); *Kondo, et al. v. Creative Services, Inc.,* No. 1:22-cv-10438-DJC, ECF No. 39 (D. Mass. Sept. 7, 2023) (same); *In re Sovos Compliance Data Security Incident Litigation*, No. 1:23-cv-12100 (D. Mass.), ECF No. 12 (same); *Alliance Ophthalmology, PLLC v. ECL Group, LLC*, Nos. 1:22-CV-296, 1:22-CV-468, 2024 WL 3203226, at *14-16 (M.D.N.C.

June 27, 2024); *Abrams, et al. v. The Savannah College of Art and Design Inc.*, No. 1:22-cv-04297-LMM, ECF No. 29 (N.D. Ga. Sept. 23, 2023) (same); *Phelps, et al. v. Toyotetsu North America*, No. 6:22-cv- 00106-CHB-HA, ECF No. 47 (E.D. Ky. Oct. 25, 2023) (same); *In re: Forefront Data Breach Litigation*, No. 1:21-cv-000887-LA, 2023 WL 6215366, at *9 (E.D. Wis. Mar. 22, 2023) (same); and *Davidson v. Healthgrades Operating Company, Inc*., No. 1:21-cv-01250-RBJ, ECF No. 50 (D. Colo. Aug. 22, 2022) (same); *Welsh v. Navy Fed. Credit Union*, No. 5:16–CV–1062–DAE, 2018 WL 7283639, at *16 (W.D. Tex. Aug. 20, 2018) ("When the percentage method is used, fee awards commonly fall between 20% at the low end and 50% at the upper end[.]").

Accordingly, this factor weighs in favor of approving the attorneys' fees requested.

### 6. *Considerations of Public Policy.*

In weighing considerations of public policy, courts may consider the number of objections to the proposed settlement from the class members. *See Noto*, 2023 WL 7107840, at *12. In the current case, there have been only two opt-outs and zero objections from the Class Members. In addition, class actions such as this "are an invaluable safeguard for public rights." *See Ying*, 2025 WL 968586, at *14. Further, Class Counsel remains completely uncompensated for the time invested in the Action, in addition to the substantial costs they have advanced. Counsel Decl. ¶ 36. Public policy concerns—ensuring the continued availability of experienced and capable counsel to represent classes of injured plaintiffs holding small individual claims—support the requested fee. Accordingly, this factor weighs in favor of awarding the requested attorneys' fees.

### D. The Requested Cost Reimbursement Request Is Reasonable

Courts in the Second Circuit normally grant expense requests in class action settlements as a matter of course. *See Noto*, 2023 WL 7107840, at *12; *See also Ying*, 2025 WL 968586, *17 ("Courts typically allow counsel to recover their reasonable out-of-pocket expenses."). The costs sought to be reimbursed were all advanced by Class Counsel and were necessarily and reasonably

incurred in the prosecution of this case, including court fees, mediation fees, research, and other services. Counsel Decl. ¶ 10. Therefore, the requested $837.22 in litigation costs should be awarded to Plaintiff's counsel.

### E.    The Requested Service Awards Are Reasonable

Class Counsel move this Court to approve a $3,000.00 Service Award to Plaintiff for his service as a Class Representative. Courts have discretion to approve reasonable service awards to compensate the named plaintiffs for their "time and efforts to assist the prosecution of this case and the related risks and burdens." *See Ying*, 2025 WL 968586, at *8. Plaintiff in the current case has been instrumental in assisting Class Counsel throughout this proceeding. Counsel Decl. ¶ 28. Plaintiff initiated and remained in contact with Class Counsel; considered and reviewed the pleadings in this case and the Agreement; supervised, monitored, and periodically visited with Class Counsel; provided background documents and followed the progress of this litigation to ensure that Settlement Class received the best recovery possible given the particular circumstances and risks of the Action. *Id.* Balancing the services Plaintiff rendered against the modest amount of the $3,000.00 each requested, the Court should find such amount is reasonable.

## IX.    CONCLUSION

Plaintiff and Class Counsel respectfully request this Court enter an Order: (1) granting Final Approval to the Settlement; (2) affirming certification of the Settlement Class for settlement purposes, pursuant to Fed. R. Civ. P. 23(a) and 23(b)(3); (3) confirming the appointment of Plaintiff Tyler Blankenship as Class Representative; (4) confirming the appointments of Jarrett L. Ellzey and Leigh Montgomery as Class Counsel; (5) confirming the appointment of CPT Group as Settlement Administrator; (6) awarding Class Counsel $108,225.00 in attorneys' fees, including $837.22 in costs; (7); awarding a Service Award to Plaintiff in the amount of $3,000; and (8) entering final judgment dismissing the Action with prejudice and reserving jurisdiction over

Settlement implementation. Plaintiff attaches a proposed Final Approval Order as **_Exhibit D_**.

Dated: June 9, 2025                           Respectfully submitted,

_/s/ Jarrett L. Ellzey_
Jarrett L. Ellzey&
Texas Bar No. 24040864
jellzey@eksm.com
Leigh S. Montgomery*
Texas Bar No. 24052214
lmontgomery@eksm.com
**EKSM, LLP**
4200 Montrose, Suite 200
Houston, Texas 77006
Phone: (888) 350-3931
Fax: (888) 276-3455

**ATTORNEYS FOR PLAINTIFF**
* admitted _pro hac vice_

### <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the foregoing Motion was served on all counsel of record on June 9, 2025 via CM/ECF, in accordance with Fed. R. Civ. P. 5(b).

*/s/ Jarrett L. Ellzey*
Jarrett L. Ellzey
